IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA WATTS<br>2101 N. 33rd Street, Apt. H<br>Philadelphia, PA 19122 | CIVIL ACTION |
| Plaintiff, | NO.: _____ |
| v. | |
| SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107 | |
| and | |
| SHARON GONZALES<br>1234 Market Street<br>Philadelphia, PA 19107 | |
| Defendants. | |

## COMPLAINT

The Plaintiff, BRENDA WATTS ("WATTS"), by and through her undersigned counsel, hereby files her Complaint against SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY ("SEPTA") and SHARON GONZALES ("GONZALES") for declaratory and injunctive relief and compensatory and punitive damages, and states in support as follows:

## INTRODUCTION

1.     This is an action under Title II of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. §12101, *et seq.,* under Section 505 of the Rehabilitation Act of 1973 through which Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") is

enforced, under Civil Action for Deprivation of Rights, 42 U.S.C. §1983 ("1983"), Negligence Per Se and Negligence, to redress unlawful disability-based practices and to make plaintiff "WATTS" whole.

2.      The plaintiff, WATTS, was sixty-seven (67) years old on September 30, 2019, and suffered from, among other conditions, "neoplasm of unspecified behavior, multiple myeloma not having achieved remission, localized swelling, mass and lump to left lower limb, difficulty in walking, muscle weakness, and unspecified osteoarthritis," diagnoses well within the definition of a "qualified individual with a disability," pursuant to the ADA.  (See PowerBack Admission Record and applicable Discharge Transition Plan attached hereto as **Exhibit "A"** which further specifies the need for a walker).

3.      Defendant, SEPTA is public entity and an agency of the government of the Commonwealth of Pennsylvania providing the general public with transportation service on a regular and continuing basis.  SEPTA is, among other things, a "designated public transportation" entity which "operates" a "fixed route system."[1]  SEPTA is a recipient of Federal financial assistance.   On September 30, 2019, SEPTA failed or refused to activate the lift mechanism on one SEPTA's busses and thereby denied plaintiff access to public transportation in a manner equal to that provided for persons who are not disabled, in violation of Title II of the ADA, the Rehabilitation Act,  42 U.S.C. §1983 and 49 C.F.R. §37.   Moreover, SEPTA has successfully invoked "sovereign immunity" to defend itself in state court from previous claims arising from defendant's failures or refusals to activate lift mechanisms for disabled persons attempting to access public transportation, thereby causing injury and/or denial of access to said disabled persons.

---

[1] 42 U.S.C. §§12141(2), (3) and (4)

4.     Defendant, GONZALES, is an individual and employee of SEPTA providing the general public with transportation service on a regular and continuing basis.   On September 30, 2019,  Gonzales, the operator of a SEPTA bus, failed or refused to activate the lift mechanism on one of SEPTA's busses and thereby denied plaintiff access to public transportation in a manner equal to that provided for persons who are not disabled, in violation of Title II of the ADA, the Rehabilitation Act,  42 U.S.C. §1983 and 49 C.F.R. §37.

5.     Qualified or otherwise qualified individuals with disabilities similar to that of WATTS, are dependent on adjunctive ambulatory devices or aides, such as walkers, to meaningfully ambulate and access public transportation vehicles.

6.     Plaintiff WATTS brings this action against SEPTA to enforce Section 504 of the Rehabilitation Act requiring that a public entity receiving federal financial assistance, which SEPTA receives each year, must not deny persons with disabilities the benefits of its programs, services or activities.[2]

7.     Plaintiff WATTS requested that SEPTA and GONZALES provide auxiliary aides, namely the deployable ramp, in order for her to safely disembark from the bus on which she was a passenger.  However, SEPTA and GONZALES refused to deploy said ramp.

8.     SEPTA's and GONZALES' refusal to deploy said ramp violates Title II of the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. §1983, and 49 C.F.R. §37.

---

[2] See 29 USC §794(a)

## JURISDICTION AND VENUE

9.      Plaintiff WATTS brings this action, and is expressly authorized to do so, under   Sections 12132 and 12133 of the ADA, 42 U.S.C. §§12132 and 12133 incorporating by reference the remedies, procedures and rights under the Rehabilitation Act, 29 U.S.C. §§794 and 794a(a)(2) and (1)(a), and under section 505 of the Rehabilitation Act, which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporation the remedies, rights and procedures set forth in section Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, *et seq.*

10.      Plaintiff WATTS further brings this action under the Civil Rights Act of 1964, 42 U.S.C. §1983.

11.      This Court has jurisdiction to hear and determine this claim based upon violations of the Federal Civil Rights Law pursuant to 28 U.S.C.A §§1331 and 1343(a), *et seq.*, the ADA, the Rehabilitation Act, and 42 U.S.C. §1983.  This Court's jurisdiction is proper under 28 U.S.C. §§451, 1331, and 1343.

12.      SEPTA has its offices within, Gonzales is employed and resides within, Watts resides within, and the activities which constitute the basis of this action occurred within the City of Philadelphia, Commonwealth of Pennsylvania.

13.      Venue is properly laid in this judicial district pursuant to the provisions of 28 U.S.C.A. § 1391(b).

14.      Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under state law.

## PARTIES

15.     Plaintiff, BRENDA WATTS, was a sixty-seven (67) year old person at all relevant times, residing in the Commonwealth of Pennsylvania at 2101 N. 33rd Street, Apartment H, Philadelphia, PA 19122, and at all relevant times was a "qualified individual with a disability" within the meaning of the Americans with Disabilities Act (ADA).  She is substantially limited in major life activities including, but not limited to, walking, standing, lifting, bending and working.  Plaintiff WATTS is and was, at all relevant times, dependent on the use of walker.

16.     Plaintiff WATTS is an otherwise qualified or qualified individual with a disability in that she is and was qualified to access SEPTA's buses including, but not limited to, those being operated by GONZALES.

17.     Due to her disability, Plaintiff WATTS required  auxiliary aides and services, such as a deployable ramp, to be able to participate in and receive the benefit of SEPTA and its buses including, but not limited to, those being operated by GONZALES.

18.     Defendant, SEPTA, is an agency of the government of the Commonwealth of Pennsylvania providing the general public with transportation services on a regular and continuing basis, with offices and a normal place of business located at 1234 Market Street, Philadelphia, PA 19107.  At all relevant times, SEPTA was subject to the authority of the Federal Transit Administration, was a recipient of federal funding, and was obligated to comply with the ADA.  At all relevant times, SEPTA acted individually and/or by and through co-defendant GONZALES who at all times was acting as an agent, servant, workman, employee and/or ostensible agent within the course and scope of her employments and/or agency.

19.     Defendant SHARON GONZALES is an individual and all relevant times was an employee of SEPTA providing the general public with transportation service on a regular and continuing basis.  At all relevant times, GONZALES held herself out as a public transportation bus driver for SEPTA and possessed the ordinary and customary skills, diligence and knowledge of like bus drivers in the field.  At all relevant times, GONZALES was the driver of the bus on which Plaintiff WATTS was a passenger.  At all relevant times, GONZALES acted individually and/or by and through co-defendant SEPTA as their actual and/or apparent agent, servant, employee and/or ostensible agent acting in the course and scope of her actual and/or apparent employment and/or agency. At all relevant times, GONZALES was obligated to comply with the ADA.

## FACTS

20. Pursuant to 28 C.F.R § 36.105 *et seq.*, disability is defined as follows:

(a)(1) Disability means, with respect to an individual:

(i)  A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(ii)  A record of such an impairment; or

(iii)  Being regarded as having such an impairment as described in paragraph (f) of this section.

21. The ADA defines "Qualified Individual with a Disability" as follows:

"[a]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the

participation in programs or activities provided
by a public entity.

(42 U.S.C. § 12131(2))

22.     The purpose of 49 CFR §37, United States Department of Transportation,
Federal Transit Administration, Transportation Services for Individuals with Disabilities, is
"[t]o implement the transportation and related provisions of title II and III of the Americans
with Disabilities Act of 1990."

23.     Subpart B of 49 CFR §37, states that this part is applicable to "[a]ny public
entity that provides designated public transportation or intercity or commuter rail
transportation" regardless of "[w]hether or not they receive Federal financial assistance
from the Department of Transportation."  Defendant SEPTA is such an entity.[3]

24.     Pursuant to 49 CFR §37.5 – Nondiscrimination:

(a)     No entity shall discriminate against an individual
with a disability in connection with the provision
of transportation service.

(b)     [a]n entity shall not, on the basis of disability,
deny to any individual with a disability the
opportunity to use the entity's transportation
service for the general public, if the individual is
capable of using that service.

25.     Furthermore, 49 CFR §38.1 "[p]rovides minimum guidelines and
requirements for accessibility standards in part 37 of this title for transportation vehicles
required to be accessible by the Americans With Disabilities Act (ADA) of 1990 (42 U.S.C.
1201 *et seq.)*.

26.     49 CFR §38.23, entitled "Mobility aid accessibility," states in part:

(a) ***General.*** All vehicles covered by this subpart shall
provide a level-change mechanism or boarding

---

[3] 49 CFR §37.21(a)(1) and (a), respectively

> device (e.g., lift or ramp) complying with paragraph (b) of (c) of this section and sufficient clearances to permit a wheelchair or **other mobility aid user** to reach a securement location. (emphasis added).

27.     The SEPTA bus in question in this matter is a vehicle covered by 49 CFR §§37 and 38.

28.     At all relevant times, WATTS was a "qualified individual with a disability" who suffered from multiple medical conditions, was dependent on a walker and required the assistance of mechanical lifting devices in order to safely embark and disembark public transportation vehicles in a manner equal to non-disabled persons.

29.     On September 30, 2019, at approximately 1:45 p.m., WATTS, while using her walker, demonstrated significant difficulty boarding a Route 32 bus that GONZALES was operating at 33rd and Diamond Streets.

30.     Several minutes later, WATTS intended to disembark said bus at the intersection of 33rd Street and Cecil B. Moore Avenue.  Upon the bus coming to a stop, WATTS requested GONZALES deploy the ramp in order to ease her disembarkation.

31.     GONZALES refused to deploy the ramp, stating in words or substance, "I ain't got time for that.  We don't put out the ramp for walkers."

32.     When GONZALES stopped the bus, the distance between the step and the curb prohibited WATTS from placing her walker fully on the roadway while creating a space between the bus's bottom step and the walker, and the distance was too far for WATTS to place her walker on the sidewalk.

33.     WATTS stepped down with her right leg while holding on to her walker but due to her disability, was unable to move her left leg in order to step down.  In the process, WATTS' left leg twisted in an oblique manner.  This twisting resulted in a fracture of her

left femur.  Using her arms to support her full weight to fully step off of the bus caused WATTS to suffer a fracture of her left humerus.

34.     WATTS was transported from the scene by ambulance to Temple University Hospital where she ultimately underwent open reduction internal fixation (ORIF) surgeries on left femur and left humerus.

35.     WATTS suffered serious personal injuries and pain when defendants, acting under color of state law, failed or refused to properly utilize and/or deploy the bus's ramp.  This inaction denied WATTS access to public transportation services in a manner equal to non-disabled persons.

36.     As a further direct and proximate result of the aforesaid conduct by SEPTA and GONZALES, WATTS suffered a severe shock to her nervous system and great physical pain and was required to expend moneys for medicine, medical supplies and medical attention in efforts to resolve and alleviate same.

37.     As a further direct and proximate result of the aforesaid conduct by SEPTA and GONZALES, WATTS has been precluded from participation in many of the activities she previously enjoyed and has suffered from diminution of the quality of her life.

38.     As a further direct and proximate result of the aforesaid conduct by SEPTA and GONZALES, WATTS will in the future continue to suffer from great physical pain and financial loss as she is required to continue to expend further moneys for medicines, medical supplies and medical attention, and further diminution of the quality of her life.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA
## BRENDA WATTS V. SEPTA

39.     Plaintiff incorporates by reference paragraphs 1 through 38 above as if fully set forth at length herein.

40.     SEPTA's operation of "designation of public transportation" with a "fixed route system" is a service, program or activity within the definition of Title II of the ADA.

41.     On September 30, 2019, WATTS was a passenger on a SEPTA bus being operated by GONZALES.

42.     WATTS requested that GONZALES deploy the ramp so that she could disembark the bus safely while ambulating with her walker.

43.     GONZALES, as acting as an agent, servant, employee and/or ostensible agent acting in the course and scope of her actual and/or apparent employment and/or agency with her employer, SEPTA, refused to deploy the ramp.

44.     SEPTA failed to provide an auxiliary aid or service for WATTS to disembark safely from the bus after a specific request was made to do so.

45.     SEPTA denied WATTS the opportunity to participate in or benefit from the programs, services and activities afforded to persons who are not mobility impaired.

46.     SEPTA denied WATTS these opportunities due to her disabilities, i.e. her mobility impairment.

47.     SEPTA denied WATTS the opportunity to participate in and benefit from a service, program or activity due to her disability.

48.     SEPTA had actual knowledge that its agents, servants, workmen and/or employees (vehicle operators) had committed acts substantially similar to those

described herein but failed to diligently exercise their responsibilities to instruct, supervise, control and discipline its vehicle operator.[4]

49.    SEPTA has failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

50.    SEPTA failed to provide auxiliary aids and services, namely the deployment of a ramp in contravention of 49 C.F.R. §37.

51.    Providing the deployment of the ramp as requested would not have resulted in any undue burden to SEPTA.

52.    Providing the deployment of the ramp as request would not have fundamentally changed the nature of the service, program or activity.

53.    SEPTA's action of supporting a policy that deprives disabled individuals of their right to equal access to public accommodations and transportation services thus preventing them from enjoying the advantages and benefits of public accommodations violates the ADA.

54.    As a direct and proximately result of Defendant SEPTA's unlawful discrimination, Plaintiff WATTS has sustained injuries and damages.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A. A Declaratory Judgment finding that, as of the commencement of this action, SEPTA was in violation of the specific requirements of Title II of the ADA described above, and the relevant implementing regulations of the ADA, in that

---

[4] Darlene Bottoms v. SEPTA, 805 A.2d 47 (Pa. Cmmw. Ct. 2002); Ernestine Lee v. SEPTA, USCD EDPA 2:05-cv-01658

SEPTA took no action that was reasonably calculated to ensure its operators deployed ramps when the need for deployment was obvious or upon request of its passengers who were obviously disabled or qualified individuals with a disability;

B.  A permanent injunction pursuant to 42 U.S.C. §12188(a)(2) and 28 CFR §35.160(b)(1) which directs SEPTA to take all steps necessary to require its operators to fully comply with any and all policies and procedures already and not already in place mandating the deployment of ramps for passengers requesting same or who are obviously disabled or who are qualified individuals with a disability in full compliance with the ADA, and which further directs the that Court shall retain jurisdiction for a period to be determined to ensure that SEPTA has adopted and is following an institutional policy that will in fact cause SEPTA to remain fully in compliance with the law;

C.  That SEPTA ensures that all employees, more specifically its vehicle operators, be given appropriate training on periodic basis calculated to achieve ongoing compliance with the policies and procedures relating to the deployment of said ramps for passengers requesting same or who are obviously disabled or who are qualified individuals with a disability in full compliance with the ADA.

D.  Damages to WATTS as compensation for SEPTA's deliberate indifference to violating her rights under the ADA and Rehabilitation Act;

E.  Payment of costs of suit;

F.  Payment of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205 and 28 CFR §35.175; and

G.  Any and all other relief this Court deems necessary and just.

**COUNT II**
**VIOLATION OF TITLE II OF THE ADA**
**BRENDA WATTS V. SHARON GONZALES**

55.    Plaintiff incorporates by reference paragraphs 1 through 54 above as if fully set forth at length herein.

56.    SEPTA's operation of "designation of public transportation" with a "fixed route system" is a service, program or activity within the definition of Title II of the ADA.

57.    On September 30, 2019, WATTS was a passenger on a SEPTA bus being operated by GONZALES.

58.    WATTS requested that GONZALES deploy the ramp so that she could disembark the bus safely while ambulating with her walker.

59.    GONZALES, as acting as an agent, servant, employee and/or ostensible agent acting in the course and scope of her actual and/or apparent employment and/or agency with her employer, SEPTA, refused to deploy the ramp.

60.    GONZALES failed to provide an auxiliary aid or service for WATTS to disembark safely from the bus after a specific request was made to do so.

61.    GONZALES denied WATTS the opportunity to participate in or benefit from the programs, services and activities afforded to persons who are not mobility impaired.

62.    GONZALES denied WATTS these opportunities due to her disabilities, i.e. her mobility impairment.

63.    GONZALES denied WATTS the opportunity to participate in and benefit from a service, program or activity due to her disability.

64.     GONZALES knew, or should have known, that SEPTA had actual knowledge that its agents, servants, workmen and/or employees (vehicle operators) had committed acts substantially similar to those described herein but failed to diligently exercise their responsibilities to instruct, supervise, control and discipline its vehicle operator. (See *Bottoms v. SEPTA and Lee v. SEPTA, supra*.).

65.     GONZALES failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

66.     GONZALES failed to provide auxiliary aids and services, namely the deployment of a ramp in contravention of 49 C.F.R. §37.

67.     Providing the deployment of the ramp as requested would not have resulted in any undue burden to GONZALES.

68.     Providing the deployment of the ramp as request would not have fundamentally changed the nature of the service, program or activity.

69.     GONZALES' action of supporting a policy that deprives disabled individuals of their right to equal access to public accommodations and transportation services thus preventing them from enjoying the advantages and benefits of public accommodations violates the ADA.

70.     As a direct and proximately result of Defendant GONZALES' unlawful discrimination, Plaintiff WATTS has sustained injuries and damages.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.  Damages to WATTS as compensation for SEPTA's deliberate indifference to violating her rights under the ADA and Rehabilitation Act;

B.  Payment of costs of suit;

C.  Payment of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205 and 28 CFR §35.175; and

D.  Any and all other relief this Court deems necessary and just.

<u>**COUNT III**</u>
<u>**VIOLATION OF THE REHABILITATION ACT OF 1973**</u>
<u>**BRENDA WATTS V. SEPTA**</u>

71.     Plaintiff incorporates by reference paragraphs 1 through 70 above as if fully set forth at length herein.

72.     Each of Defendant SEPTA's busses are equipped with a ramp that can easily be deployed by its operators for the safe embarkation and disembarkation of its passengers with disabilities or those "qualified individuals with a disability," such as WATTS.

73.     At all times relevant, SEPTA was a recipient of federal financial assistance bringing SEPTA under the Rehabilitation ACT which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities."

74.     The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government. SEPTA is an instrumentality of State or local government. Defendant SEPTA is a "designated public transportation" entity which "operates" a "fixed route system" and as such, are a "program or activity" within the meaning of the Rehabilitation Act. 29 U.S.C. Section 794(b)(1)(A).

75.    On September 30, 2019, Plaintiff WATTS requested that SEPTA, and its operator GONZALES, deploy the onboard ramp so that she could safely disembark from the bus.  SEPTA and GONZALES failed and refused to deploy said ramp.

76.    SEPTA failed to provide WATTS with the requested auxiliary aids and services she was entitled to as a qualified individual with a disability.

77.    Plaintiff is expressly authorized to bring this action under the Rehabilitation Act of 1973, 29 U.S.C. Section 794 and 794a(a)(2) and (b)(1)(A), and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq.

78.    SEPTA had actual knowledge that its agents, servants, workmen and/or employees (vehicle operators) had committed acts substantially similar to those described herein but failed to diligently exercise their responsibilities to instruct, supervise, control and discipline its vehicle operator.  (See *Bottoms v. SEPTA and Lee v. SEPTA, supra*.).

79.    Since at least 2002, SEPTA has engaged in unlawful practices in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794.  These practices include, but are not limited to, denying Plaintiff WATTS, a qualified individual with a disability who, with or without reasonable modifications to the rules, policies or practices, the provision of auxiliary aids and services, namely the onboard ramp, which meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by SEPTA.

80.    SEPTA has acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA in regards to the unlawful practices described herein because SEPTA is and was aware of the available auxiliary aids and services and failed to provide any such services, including but not limited to the onboard ramp, and failed to provide said servicers upon WATTS' request for same.

81.    As a direct and proximate result of SEPTA's unlawful discrimination, Plaintiff WATTS has sustained serious personal injuries and damages.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.  A Declaratory Judgment finding that, as of the commencement of this action, SEPTA was in violation of the specific requirements of the Rehabilitation Act as described above and the relevant implementing regulations of the Rehabilitation Act, in that SEPTA took no action that was reasonably calculated to ensure its operators deployed ramps when the need for deployment was obvious or upon request of its passengers who were obviously disabled or qualified individuals with a disability;

B.  A permanent injunction pursuant to 42 U.S.C. §12133; 28 CFR §35.160(a)(1) and (b)(1); and 29 U.S.C. §794a(a)(2) which directs SEPTA to take all steps necessary to require its operators to fully comply with any and all policies and procedures already and not already in place mandating the deployment of ramps for passengers requesting same or who are obviously disabled or who are qualified individuals with a disability in full compliance with the ADA and the Rehabilitation Act of 1973, and which further directs the that Court shall retain jurisdiction for a period to be determined to ensure that SEPTA has adopted

and is following an institutional policy that will in fact cause SEPTA to remain fully in compliance with the law;

C.  That SEPTA ensures that all employees, more specifically its vehicle operators, be given appropriate training on periodic basis calculated to achieve ongoing compliance with the policies and procedures relating to the deployment of said ramps for passengers requesting same or who are obviously disabled or who are qualified individuals with a disability in full compliance with the ADA.

D.  Damages to WATTS as compensation for SEPTA's deliberate indifference to violating her rights under the ADA and Rehabilitation Act;

E.  Payment of costs of suit;

F.  Payment of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205 and 28 CFR §35.175; and

G.  Any and all other relief this Court deems necessary and just

## COUNT IV
## VIOLATION OF THE REHABILITATION ACT OF 1973
## BRENDA WATTS V. SHARON GONZALES

82.     Plaintiff incorporates by reference paragraphs 1 through 81 above as if fully set forth at length herein.

83.     Each of Defendant SEPTA's busses, including the one being operated by GONZALES that is the subject of this Complaint, are equipped with a ramp that can easily be deployed by its operators for the safe embarkation and disembarkation of its passengers with disabilities or those "qualified individuals with a disability," such as WATTS.

84.    At all times relevant, SEPTA was a recipient of federal financial assistance bringing SEPTA under the Rehabilitation ACT which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities."

85.    The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government. SEPTA is an instrumentality of State or local government. Defendant SEPTA is a "designated public transportation" entity which "operates" a "fixed route system" and as such, are a "program or activity" within the meaning of the Rehabilitation Act. 29 U.S.C. Section 794(b)(1)(A).

86.    On September 30, 2019, Plaintiff WATTS requested that SEPTA, and its operator GONZALES, deploy the onboard ramp so that she could safely disembark from the bus.  SEPTA and GONZALES failed and refused to deploy said ramp.

87.    GONZALES failed to provide WATTS with the requested auxiliary aids and services she was entitled to as a qualified individual with a disability.

88.    Plaintiff is expressly authorized to bring this action under the Rehabilitation Act of 1973, 29 U.S.C. Section 794 and 794a(a)(2) and (b)(1)(A), and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq.

89.    GONZALES knew, or should have known, that SEPTA had actual knowledge that its agents, servants, workmen and/or employees (vehicle operators) had committed acts substantially similar to those described herein but failed to diligently

exercise their responsibilities to instruct, supervise, control and discipline its vehicle operator. (See *Bottoms v. SEPTA and Lee v. SEPTA, supra.*).

90.     Since at least 2002, SEPTA has engaged in unlawful practices in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794.  These practices include, but are not limited to, denying Plaintiff WATTS, a qualified individual with a disability who, with or without reasonable modifications to the rules, policies or practices, the provision of auxiliary aids and services, namely the onboard ramp, which meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by SEPTA.

91.     GONZALES acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA in regards to the unlawful practices described herein because GONZALES is and was aware of the available auxiliary aids and services and failed to provide any such services, including but not limited to the onboard ramp, and failed to provide said servicers upon WATTS' request for same.

92.     As a direct and proximate result of GONZALES' unlawful discrimination, Plaintiff WATTS has sustained serious personal injuries and damages.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A. Damages to WATTS as compensation for SEPTA's deliberate indifference to violating her rights under the ADA and Rehabilitation Act;

B. Payment of costs of suit;

C. Payment of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205 and 28 CFR §35.175; and

D. Any and all other relief this Court deems necessary and just.

## COUNT V
## VIOLATION OF THE CIVIL RIGHTS ACT – 42 U.S.C. §1983
## BRENDA WATTS V. SEPTA

93.     Plaintiff incorporates by reference paragraphs 1 through 92 above as if fully set forth at length herein.

94.     Plaintiff WATTS is a "qualified individual with a disability" as described herein.

95.     Acting under color of State law, defendant SEPTA negligently failed to instruct, supervise, control and/or discipline their employees of their duties to refrain from:

a.  Unlawfully and/or maliciously utilizing and/or failing to utilize and/or failing to properly utilize the mechanical lifting device, namely the ramp, upon its busses for disabled persons, thereby denying such persons equal access, such as WATTS;

b.  Otherwise depriving disabled citizens and residents, such as WATTS, of their constitutional and/or statutory rights and privileges.

96.     SEPTA had actual knowledge that its agents, servants, workmen and/or employees (vehicle operators) had committed acts substantially similar to those described herein.  (See *Bottoms v. SEPTA and Lee v. SEPTA, supra.*) but failed to diligently exercise their responsibilities to instruct, supervise, control and discipline its vehicle operators.  SEPTA knew, or should have known, of deprivations of constitutional and/or statutory rights and violations of laws alleged herein were likely to continue to take place.  SEPTA had power to prevent or aid in the prevention of the commission of said wrongs, could have done so with reasonable diligence, but grossly and recklessly neglected, failed or refused to do so.  Moreover, SEPTA has actually successfully

defended similar previous conduct in state court, further illustrating its intention to continue the conduct.

97.     SEPTA had authority to, and was required by the ADA and the Rehabilitation Act, and by statues and ordinances of the Commonwealth of Pennsylvania, to exercise due diligence to instruct, supervise, control and discipline its vehicle operators on a continuing basis, but intentionally, recklessly or negligently failed to perform such duties as required by law, statute or ordinance.

98.     SEPTA, directly or indirectly, under color of law, approved or ratified the unlawful conduct of its vehicle operators not only by failing to exercise their duties and responsibilities, but by actually invoking sovereign immunity to defend itself from similar previous claims.

99.     In the matter at hand, SEPTA, through GONZALES, failed to deploy the ramp for the safe disembarkation from the bus upon the request of WATTS who, at all times relevant, was a qualified individual with a disability.

100.    The aforesaid acts and/or omissions of SEPTA constitute intentional conduct or recklessness under 42 U.S.C. §1983.

101.    As a direct and proximate result of GONZALES' unlawful discrimination, Plaintiff WATTS has sustained serious personal injuries and damages.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A. Compensatory and punitive damages for SEPTA's deliberate indifference to violating her rights under 42 U.S.C. §1983;

B. Payment of costs of suit;

C. Payment of reasonable attorneys' fees and costs; and

D.  Any and all other relief this Court deems necessary and just.

## COUNT VI
## VIOLATION OF THE CIVIL RIGHTS ACT – 42 U.S.C. §1983
## BRENDA WATTS V. SHARON GONZALES

102.    Plaintiff incorporates by reference paragraphs 1 through 101 above as if fully set forth at length herein.

103.    Plaintiff WATTS is a "qualified individual with a disability" as described herein.

104.    Acting under color of State law, defendant GONZALES:

a.  Unlawfully and/or maliciously failed to utilize and/or failed to properly utilize the mechanical lifting device, namely the ramp, upon the bus she was operating thereby denying WATTS equal access;

b.  Deprived WATTS of her constitutional and/or statutory rights and privileges.

105.    GONZALES knew, or should have known, that SEPTA had actual knowledge that its agents, servants, workmen and/or employees (vehicle operators) had committed acts substantially similar to those described herein but failed to diligently exercise their responsibilities to instruct, supervise, control and discipline its vehicle operator. (See *Bottoms v. SEPTA and Lee v. SEPTA, supra.*).  GONZALES knew, or should have known, of deprivations of constitutional and/or statutory rights and violations of laws alleged herein were likely to continue to take place.  GONZALES had power to prevent or aid in the prevention of the commission of said wrongs, could have done so with reasonable diligence, but grossly and recklessly neglected, failed or refused to do so.

106.   GONZALES had authority to, and was required by the ADA and the Rehabilitation Act, and by statues and ordinances of the Commonwealth of Pennsylvania, to exercise due diligence, but intentionally, recklessly or negligently failed to perform her duties as required by law, statute or ordinance.

107.   GONZALES, directly or indirectly, under color of law, failed to exercise her duties and responsibilities.

108.   In the matter at hand, GONZALES failed to deploy the ramp for the safe disembarkation from the bus upon the request of WATTS who, at all times relevant, was a qualified individual with a disability.

109.   The aforesaid acts and/or omissions of GONZALES constitute intentional conduct or recklessness under 42 U.S.C. §1983.

110.   As a direct and proximate result of GONZALES' unlawful discrimination, Plaintiff WATTS has sustained serious personal injuries and damages.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.   Compensatory and punitive damages for GONZALES' deliberate indifference to violating her rights under 42 U.S.C. §1983;

B.   Payment of costs of suit;

C.   Payment of reasonable attorneys' fees and costs; and

D.   Any and all other relief this Court deems necessary and just.

### COUNT VII
### NEGLIGENCE PER SE
### BRENDA WATTS V. SEPTA

111.   Plaintiff incorporates by reference paragraphs 1 through 110 above as if fully set forth at length herein.

112.     Defendant SEPTA violated the ADA and the Rehabilitation Act as herein set forth, which, in pertinent part, prohibits discrimination against disabled individuals and qualified individuals with a disability in the provision of transportation services.

113.     The ADA and the Rehabilitation Act were intended, exclusively or in part, to protect a class of persons which included WATTS, whose interest against harm has been invaded by SEPTA.

114.     The ADA and the Rehabilitation Act were intended, exclusively or in part, to protect that particular interest that WATTS had against being harmed which was invaded by SEPTA.

115.     The ADA and the Rehabilitation Act were designed to protect the interest of WATTS against the particular hazard from which harm to WATTS arose.

116.     SEPTA's violations of the ADA and the Rehabilitation Act were the "legal cause" that is the direct and proximate cause of the invasion of WATTS' interest to be free from harm, as a of which , WATTS sustained the aforementioned harms set forth previously in this Complaint.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.  Compensatory and punitive damages for SEPTA's negligence per se;

B.  Payment of costs of suit;

C.  Payment of reasonable attorneys' fees and costs; and

D.  Any and all other relief this Court deems necessary and just.

## COUNT VIII
## NEGLIGENCE PER SE
## BRENDA WATTS V. SHARON GONZALES

117.    Plaintiff incorporates by reference paragraphs 1 through 116 above as if fully set forth at length herein.

118.    Defendant GONZALES violated the ADA and the Rehabilitation Act as herein set forth, which, in pertinent part, prohibits discrimination against disabled individuals and qualified individuals with a disability in the provision of transportation services.

119.    The ADA and the Rehabilitation Act were intended, exclusively or in part, to protect a class of persons which included WATTS, whose interest against harm has been invaded by GONZALES.

120.    The ADA and the Rehabilitation Act were intended, exclusively or in part, to protect that particular interest that WATTS had against being harmed which was invaded by GONZALES.

121.    The ADA and the Rehabilitation Act were designed to protect the interest of WATTS against the particular hazard from which harm to WATTS arose.

122.    GONZALES' violations of the ADA and the Rehabilitation Act were the "legal cause" that is the direct and proximate cause of the invasion of WATTS' interest to be free from harm, as a of which , WATTS sustained the aforementioned harms set forth previously in this Complaint.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.  Compensatory and punitive damages for GONZALES' negligence per se;

B.  Payment of costs of suit;

C.  Payment of reasonable attorneys' fees and costs; and

D.  Any and all other relief this Court deems necessary and just.

**COUNT IX**
**NEGLIGENCE**
**BRENDA WATTS V. SEPTA**

123.    Plaintiff incorporates by reference paragraphs 1 through 122 above as if fully set forth at length herein.

124.    SEPTA was negligent in the following respects:

    a.  Failing to warn plaintiff of a defective condition;

    b.  Failing to properly prepare the bus for passengers;

    c.  Failing to maintain the bus in a safe condition for embarkation and disembarkation;

    d.  Operating the bus in such a way as to create an unreasonably dangerous situation and/or condition;

    e.  Violating laws of the United States, the Commonwealth of Pennsylvania and the City of Philadelphia pertaining to the safe maintenance and operation of busses under their control;

    f.  Violating laws of the United States, the Commonwealth of Pennsylvania and the City of Philadelphia pertaining to providing disabled persons and qualified individuals with a disability with access to public transportation equal to that provided for non-disabled persons;

    g.  Failing to exercise the highest degree of care; and

    h.  Failing to exercise due care under the circumstances.

125.   As a direct and proximate result of SEPTA's aforesaid negligence and violation of their duty of the highest degree of care, WATTS suffered serious injuries, including, but not limited to, fractures of her left femur and left humerus, both of which required ORIF surgery.

126.   As a further direct and proximate of the aforesaid acts of SEPTA, WATTS suffered a severe shock to her nervous system and great physical pain and was required to expend moneys for medicine, medical supplies and medical attention in efforts to resolve and alleviate same.

127.   As a further direct and proximate result of the aforesaid conduct by SEPTA, WATTS has been precluded from participation in many of the activities she previously enjoyed and has suffered from diminution of the quality of her life.

128.   As a further direct and proximate result of the aforesaid conduct by SEPTA, WATTS will in the future continue to suffer from great physical pain and financial loss as she is required to continue to expend further moneys for medicines, medical supplies and medical attention, and further diminution of the quality of her life.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.  Compensatory and punitive damages for SEPTA's negligence;

B.  Payment of costs of suit;

C.  Payment of reasonable attorneys' fees and costs; and

D.  Any and all other relief this Court deems necessary and just.

## COUNT IX
## NEGLIGENCE
## BRENDA WATTS V. SHARON GONZALES

129.    Plaintiff incorporates by reference paragraphs 1 through 128 above as if fully set forth at length herein.

130.    GONZALES was negligent in the following respects:

a.  Failing to warn plaintiff of a defective condition;

b.  Failing to properly prepare the bus for passengers;

c.  Failing to maintain the bus in a safe condition for embarkation and disembarkation;

d.  Operating the bus in such a way as to create an unreasonably dangerous situation and/or condition;

e.  Failure to acquiesce to the request of WATTS to deploy the ramp for her to safely disembark the bus;

f.  Violating laws of the United States, the Commonwealth of Pennsylvania and the City of Philadelphia pertaining to the safe maintenance and operation of busses under their control;

g.  Violating laws of the United States, the Commonwealth of Pennsylvania and the City of Philadelphia pertaining to providing disabled persons and qualified individuals with a disability with access to public transportation equal to that provided for non-disabled persons;

h.  Failing to exercise the highest degree of care; and

i.  Failing to exercise due care under the circumstances.

131.    As a direct and proximate result of GONZALES' aforesaid negligence and violation of her duty of the highest degree of care, WATTS suffered serious injuries, including, but not limited to, fractures of her left femur and left humerus, both of which required ORIF surgery.

132.    As a further direct and proximate result of the aforesaid acts of GONZALES, WATTS suffered a severe shock to her nervous system and great physical pain and was required to expend moneys for medicine, medical supplies and medical attention in efforts to resolve and alleviate same.

133.    As a further direct and proximate result of the aforesaid conduct by GONZALES, WATTS has been precluded from participation in many of the activities she previously enjoyed and has suffered from diminution of the quality of her life.

134.    As a further direct and proximate result of the aforesaid conduct by GONZALES, WATTS will in the future continue to suffer from great physical pain and financial loss as she is required to continue to expend further moneys for medicines, medical supplies and medical attention, and further diminution of the quality of her life.

**WHEREFORE,** the Plaintiff, BRENDA WATTS, requests relief as set forth below:

A.  Compensatory and punitive damages for GONZALES' negligence;

B.  Payment of costs of suit;

C.  Payment of reasonable attorneys' fees and costs; and

D.  Any and all other relief this Court deems necessary and just

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 13th day of August, 2020.

Respectfully Submitted,

Zibelman Legal Associates, P.C.
Alan R. Zibelman, Esquire
Counsel to Plaintiff
FBN: 66993
1500 J.F.K. Boulevard, Suite 1030
Philadelphia, PA 19102
Tel: (215) 569-0600

**By: /s/  Alan R. Zibelman**
E-Mail: alan@ziblaw.com

# EXHIBIT "A"

**Charge Destination:** Home alone

**Transportation for discharge:** None

**Family/Resident Representative:** Roxanne Brown Emergency Contact

**Address:** 2101 N 33RD STREET APT H, PHILADELPHIA, PA, 19122

**Phone:** (267) 355-2169 (cell)

*Resident is responsible for self and makes own decisions.*

-------------------------------------------------------------------------

**Attending Physician at** PowerBack Center City Phila: David Barnes

**Phone:** (215) 546-5960

## Managing Your Future

We have enjoyed working with you and your family.  Genesis feels strongly about supporting you after you leave our center.  Should you or your caregiver have any follow-up questions, please contact PowerBack Center City Phila at (215) 546-5960 or the Genesis Care Line at 1-866-745-CARE.

**IEMBER** you are allergic to:

Known Allergies

**nary Reason for your stay:**

PLASM OF UNSPECIFIED BEHAVIOR OF UNSPECIFIED SITE, MULTIPLE
ELOMA NOT HAVING ACHIEVED REMISSION

**cial Care Instructions/Limitations including treatments:**

**rapy services received during stay:**

sical therapy (PT)

## Summary of Stay

last set of vitals taken were:

perature: 98.1

e: 98

piration: 18

d Pressure: 155/81

gen Saturation Level: 100

ght: 182.2

Level: 0

Status including Advance Directive Orders: FULL CODE


Condition: Intact


ent Infections and/or colonization:


autions to take: Standard precautions are used to prevent the spread of harmful s through contact with blood, body fluids, non-intact skin (including rashes), and ous membranes. Standard precautions includes good hand washing and wearing s, a gown, face mask or eye protection as needed. Please discuss with your cian, at your follow up visit, if continuing precautions is needed.

care needs/assistance level at discharge:

**Mobility:** Independent

ipment needed: N/A

eting: Independent

ipment needed: Walker

ng: Independent

ipment needed: N/A

sehold tasks(meal prep, bill paying, simple cleaning): Independent

ipment needed: N/A

sfer from bed to chair: Independent

pment needed: N/A

king: Independent

pment needed: N/A

munication: Intact

itive Impairment: No

d Symptoms: Pt. reported feeling depressed.

hosocial needs and current behavior identified with interventions: n/a

ary Recommendations: Regular

## Service Resource Guide

l/or my caregiver understands that my primary care physician will care for me after
iarge from the center and will be notified of my stay.

**Primary Care Physician (PCP) is:** Ali Jamal Noory

**can be reached at:**

**iext PCP visit is:** 10/15/2019 10:15

**irs Who Are Helping To Care For You:**

| e | Specialty | Reason | Address | When | Phone |
|---|---|---|---|---|---|
| al Bromberg | Hematology | follow-Up Care | 3401 N. Broad St Ambulatory Care Center Philadelphia Pa. 19140 | 10/21/2019 0:00 | 215-707-4675 |

tes to remember what to talk about with Physician -  Ali Jamal Noory

ring your stay you were prescribed the following medications that have been
continued or changed, please use this to share with your physician.  YOUR
RRENT MEDICATIONS THAT YOU SHOULD TAKE AT HOME ARE LISTED ABOVE
ATTACHED.

her attachments that concern your care while in this facility:

Lab

Radiology

Medication List

Consultations

Advance Directives/State Health Care Instruction form

Therapy Transition Plan

Other -  _____

**If I experience the following signs or symptoms, I will contact my primary care physician:**

y new, increased or persistent pain that is not relieved

est tightness or increased chest pain

nfusion, dizziness or light headedness

rkened urine or decrease in urination

creased saliva production

arrhea

/ skin or skin rashes

ver (greater than 100 degrees F or increase of 2 degress F over normal

art rate greater than 100 or less than 50 per minute

rease cough and/or mucous production

rease edema in lower extremities or lower back if lying down

reased lower back pain

usea and vomiting

n or burning with urination

ortness of breath of an increase in breathing rate - greater than 28 per minute

nary incontinence

ight gain of more than 5 lbs in 3 days or more than 1.5 lbs per day

## My Equipment Needs/Status

| uipment | Status | Name Address/Phone | Delivery Date/Time |
|---|---|---|---|
| nmode | Item Ordered | Ocean Home Health, 732-961-1301 | 09/26/2019 0:00 |
| wer Chair | Item Ordered | Ocean Home Health, 732-961-1301 | 09/26/2019 0:00 |
| lker | Item Ordered | Ocean Home Health, 732-961-1301 | 09/26/2019 0:00 |

Case 2:20-cv-04015-JS  Document 1  Filed 08/06/20  Page 41 of 45

**Immunization provided during this stay:**

None

**Hearing:** Adequate

**Vision:** Adequate

**Dental:** No dentures

**Speech:** Clear speech

**Continence**

**Bladder:** Continent - complete control

**Bowel:** Continent – Complete control

**Preferred daily activity/routine/events/enjoyed:**

Enjoyed watching TV and had visitors daily

**Emergency room visits and re-hospitalization:**     None

## Community Services

itient is home bound

ome **Program information:** Bayada, 215-413-0600

ome **Care Services to be provided:** HHA - home health aide,PT - physical therapy,OT cupational therapy,skilled nursing services,Social Work

itimated **Start date:** 09/27/2019

escriptions faxed to homecare provider

d/or my caregiver:

have been involved in decisions about what will take place after I leave the center and I understand where I am going.

understand what my medications are, how to obtain them, how to take them, and I am aware of potential side effects.

understand that making a follow-up appointment with my primary care physician as soon as possible and keeping the appointment are my number one priority.

understand how to keep my health problems from becoming worse and what symptoms may present.

have the name and phone number of a physician to call if a health problem arises or experience medication side effects.

have had my most important questions answered prior to leaving the center.

understand, with permission of my primary care physician, I may return directly to the center for medical care. Please contact 866-745-CARE if needed.

have been given a copy of the discharge plan.

:harge Transition plan reviewed with

_____

lep Signature _Brenda Watts_____ Date _9/26/19_

se _Nadine Morrison, LPN_____ Date _9/26/19_

# ADMISSION RECORD

PowerBack Center City Phila
1526 Lombard St.
Philadelphia, PA 19146-1625
TEL: (215) 546-5960



Jan 22, 2020 11:22:53 ET

## RESIDENT INFORMATION

| Resident Name | Preferred Name | Unit | Room / Bed | Admission Date | Init. Adm. Date | Orig.Adm.Date | Resident # |
|---|---|---|---|---|---|---|---|
| WATTS, BRENDA | | | | 09/13/2019 | 09/13/2019 | | 117103 |

| Previous address | | | Previous Phone # | Legal Mailing address | | | |
|---|---|---|---|---|---|---|---|
| 2101 N 33RD STREET APT H, PHILADELPHIA, PA, 19122 | | | (267) 506-6460 | | | | |

| Sex | Birthdate | Age | Marital Status | Religion | Race | Occupation(s) | Primary Lang. |
|---|---|---|---|---|---|---|---|
| F | 05/22/1952 | 67 | Divorced | Unknown | Black, not of Hispanic Origin | | English |

| Admitted From | Admission Location | Birth Place | Citizenship | Maiden Name |
|---|---|---|---|---|
| Acute care hospital | Temple University Hospital | | | |

| Medicare (HIC) # | Medicare Beneficiary ID | Medicaid # | Social Security # |
|---|---|---|---|
| ▓▓▓▓▓ | | ▓▓▓▓▓ | ▓▓▓▓▓ |

| Evercare # | Managed Medicaid # | Medical Record # | Alien Registration # |
|---|---|---|---|
| | | 08239428 | |

| Managed Care # | | | |
|---|---|---|---|
| | | | |

## PAYER INFORMATION

| Primary Payer | Gateway Health Plan Medicare Advantage | Policy # 70132629 | Group # | Ins. Company | Gateway Health Plan |
|---|---|---|---|---|---|
| Second Payer | Insurance Copay/Deductible | | | | |

## OTHER INFORMATION

| Most Recent Hospital Stay | | Allergies | | |
|---|---|---|---|---|
| 09/11/2019 | 09/13/2019 | No Known Allergies | | |

| Arbitration Present Date | Arbitration Present To | Arbitration Revocation Date | Arbitration Revoked By |
|---|---|---|---|
| | | | |

| Arbitration Sign Date | Arbitration Signed By | Home Health/Hospice Agency (Discharge Only) | Home Health/Hospice Referral Date (Discharge Only) |
|---|---|---|---|
| | | | |

| Hospital Preference | Other Referring Diagnoses | Primary Care Physician (PCP) Name/Phone |
|---|---|---|
| Temple University Hospital (215) 707-2000 | LE Weakness | N/A |

## CARE PROVIDERS

| Provider | Phone | Address | UPIN | NPI |
|---|---|---|---|---|
| Attending Physician (Primary / Attending) Barnes, David | Office:(215) 546-5960 Cell:(215) 385-4944 Fax:(215) 732-7450 | 1526 Lombard Street Philadelphia, PA 19146-1625 | | 1366466302 |
| Attending Physician Brantz, Richard | Office:(215) 535-4494 Other:(215) 474-2400 Fax:(215) 535-4203 | 841 East Hunting Park Avenue Philadelphia, PA 19124-4800 | | 1912903022 |
| Attending Physician Gude, Tulasi | Office:(215) 955-6574 Fax:(215) 955-2311 | 25 South 9th Street Philadelphia, PA 19107-4408 | | 1386935559 |
| Attending Physician Heckert, Kimberly | Office:(215) 955-6574 Fax:(215) 955-2311 | 25 South 9th Street Philadelphia, PA 19107-4408 | | 1912127945 |
| Attending Physician Joshowitz, Scott | Office:(215) 546-5960 Fax:(215) 772-9070 | 1526 Lombard Street Philadelphia, PA 19146-1625 | | 1700189131 |
| Nurse Practitioner Carroll, Jaqueline | Office:(215) 546-5960 | 1526 Lombard Street Philadelphia, PA 19146-1625 | | 1255805990 |
| Nurse Practitioner Geminder, Jessica | Office:(215) 546-5960 Cell:(908) 477-8083 Fax:(215) 732-7450 | 1526 Lombard Street Philadelphia, PA 19146-1625 | | 1477068237 |
| Nurse Practitioner Roth, Jay | Office:(215) 913-7381 | 706 S 11th St Philadelphia, PA 19147-1968 | | 1851615066 |
| Physiatrist Mallow, Michael | Office:(215) 955-1200 Pager:(877) 656-1085 Fax:(215) 955-0861 | 25 South 9th Street Philadelphia, PA 19107-4408 | | 1023138237 |
| Podiatrist Iezzi, Alfred | Office:(215) 336-6600 | 2428 South Broad Street Philadelphia, PA 19145-4418 | T27656 | 1679643340 |

WATTS, BRENDA(117103) -- Continued on Page 2

## CARE PROVIDERS

| | | | | |
|---|---|---|---|---|
| On Call for Verbal Orders<br>Gomes, Ana | Office:(908) 454-9902<br>Fax:(908) 454-9905 | 290 Red School Lane<br>Phillipsburg, NJ<br>08865-1978 | | 1750348900 |
| Insurance Case Manager<br>Gentner, Bridget | Office:(215) 413-0600 | 190 North Independence Mall West<br>Philadelphia, PA<br>19106-1554 | | |

## PHARMACY

| | Phone/Fax | Address |
|---|---|---|
| Omnicare - King of Prussia* (Primary) | Phone: (866) 652-4334<br>Fax: (833) 845-5621 | 600 Allendale Road<br>King of Prussia, PA, 19406 |

## EXTERNAL FACILITIES (No Data Found)

| Facility Name | Phone | Facility Type |
|---|---|---|

## CONTACTS

| Name | Contact Type | Relationship | Address | Phone/Email |
|---|---|---|---|---|
| Brown, Roxanne | Emergency Contact # 1 | Niece | | Cell:(267) 355-2169 |
| BROWN, MARIE | Emergency Contact # 2 | Other | | |
| WATTS, BRENDA | Responsible for Billing Statement | Self | 2101 N 33RD STREET APT H<br>PHILADELPHIA, PA, 19122 | |

## DIAGNOSIS INFORMATION

| Code | Description | Onset Date | Rank | Classification |
|---|---|---|---|---|
| D49.9 | NEOPLASM OF UNSPECIFIED BEHAVIOR OF UNSPECIFIED SITE | 09/13/2019 | Primary | |
| C90.00 | MULTIPLE MYELOMA NOT HAVING ACHIEVED REMISSION | 09/13/2019 | Secondary | |
| R22.42 | LOCALIZED SWELLING, MASS AND LUMP, LEFT LOWER LIMB | 09/13/2019 | Other 3 | |
| R26.2 | DIFFICULTY IN WALKING, NOT ELSEWHERE CLASSIFIED | 09/13/2019 | Other 4 | |
| M62.81 | MUSCLE WEAKNESS (GENERALIZED) | 09/13/2019 | Other 5 | |
| R03.0 | ELEVATED BLOOD-PRESSURE READING, WITHOUT DIAGNOSIS OF HYPERTENSION | 09/13/2019 | Other 7 | |
| M19.90 | UNSPECIFIED OSTEOARTHRITIS, UNSPECIFIED SITE | 09/13/2019 | Other 8 | |
| D64.9 | ANEMIA, UNSPECIFIED | 09/13/2019 | Other 9 | |
| E87.6 | HYPOKALEMIA | 09/13/2019 | Other 20 and up | |
| Z94.84 | STEM CELLS TRANSPLANT STATUS | 09/13/2019 | Other 20 and up | History |

## ADVANCE DIRECTIVE

## MISCELLANEOUS INFORMATION

| Date of Discharge | Time | Length of Stay | Discharged to (Mortician Name and Licence No.) | | |
|---|---|---|---|---|---|
| 09/26/2019 | 1556 | 13 | Private home/apt. with home health services: Bayada Nurses - | | |
| **Signature** | | | | **Date** | **Time** |
| | | | | | |
| **Personal Effects Sent With** | | | **Relationship** | **Date** | **Time** |
| | | | | | |